EDITH H. JONES, Circuit Judge,
dissenting:
I agree completely with Judge Parker’s careful exposition of the Texas turnover statute and his conclusion that it does not apply in this case. Unfortunately, I do not agree with the majority’s judgment, because I believe that a proper reading of the record demonstrates that Sanig and Tres Vidas subjected themselves to the jurisdiction of the district court and therefore to its ultimate orders. On this narrow but critical basis, I respectfully dissent.
The majority correctly note that if the receiver had formally served Sanig or Tres Vidas with process, there would be no doubt of their submission to the district court’s jurisdiction. Further, a party may make a general appearance whenever it invokes the judgment of the court on questions other than jurisdiction and in such instances, “the focus is on affirmative action that impliedly recognizes the court’s jurisdiction over the parties.” Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1340-41 (5th Cir.1996); see also Cactus Pipe & Supply v. M/V Montmartre, 756 F.2d 1103, 1108 (5th Cir.1985) (“[a]n appearancé may also arise by implication *348 ‘from a defendant’s seeking, taking or agreeing to some step or proceeding in the cause beneficial to himself ...” (citation omitted)).
We differ in our interpretation of counsel’s actions in representing Sanig and Tres Vidas before the district court. The majority, in my view, misunderstand the significance of the attorney’s signature on the three essential court documents that constituted the receivership: the Order Approving Receivership Business Plan and Expanded Authority of Receiver, entered July 5, 2000; the Motion for Agreed Restatement of the Receivership Order; and the Agreed Order for Restatement of the Receivership Order, entered July 31, 2000. Sanig is a party to each of these documents, as it was included among several entities represented on those documents by the law firm of Settle & Pou, P.C., through attorneys J. Allen Smith and Michael Byrd. Tres Vidas is included within this signature block only on the July 6 agreed order. These typed signature blocks, one of which was specifically inter-lineated before signature, were signed deliberately and knowledgeably by counsel representing Sanig and Tres Vidas.
Moreover, in the July 5 order, the court found “that parties-in-interest received adequate notice of the Application [by the receiver for approval of the business plan and expansion of his authority], and that the agreements of such parties to the orders herein are evidenced by their execution of the Receiver’s Business Plan.” The business plan itself says that the agreements outlined therein were approved by “all requisite principals.” Appellants’ counsel knew what they were doing.
That the inclusion of Sanig and Tres Vidas was no fluke, as the majority imply, is emphasized by their organizational ties with Santos, the principal malefactor. Sanig seems to be a “front” for Santos, suggesting at a minimum that Sanig had an interest in negotiating with the receiver over the extent of its assets’ commitment to the receivership. Tres Vidas had the same type of interest, as it was a co-owner with Santos of three of Santos’s fellow judgment debtors, Sanvir, Signa and Atlanta Associates (the last through its 50% ownership of Signa). Even if Sanig and Tres Vidas were wholly independent of Santos, a conclusion made doubtful by the surrounding circumstances, their assets were deeply involved in the receivership from its inception.
The majority also appear to have overlooked that in these agreed orders, the receiver took control of assets owned by Sanig and Tres Vidas and gained broad authority to manage and dispose of those assets for the benefit of the receivership. I must respectfully disagree with the majority’s statement that none of Sanig’s or Tres Vidas’s assets are listed as receivership assets.
In fact, Tres Vidas is a 50% owner of two of the receivership entities, Sanvir and Signa, and a part owner of Highland Park Village partnership. These are designated as “receivership assets” in the restated receivership order. Among other things, the order gives the receiver the right to “deal with these assets as if he were the owner thereof.” In addition, Signa (50% owned by Tres Vidas) owned all the stock of Atlanta Associates, another receivership asset, which in turn co-owned various real estate partnership interests with Sanig and other related interests. Replacing Sanvir, the receiver also became the managing partner of six partnerships, three of which were owned in part by Sanig (New-nan Crossing Partnership; Twin Lakes Partnership; Forest Chase Partnership), and he became the receiver for Highland Park Village partnership and The Lakes Partnership, in which Sanig and/or Tres Vidas held interests.
*349 This is not even an exhaustive list of the assets’ interrelated ownership and control among Santos, Sanig and Tres Vidas. As part owners of all these entities, Sanig and Tres Vidas were committing substantial discretion to the authority of the receiver. Expressly or by implication, they authorized the receiver to resolve title disputes concerning the assets and to litigate over the extent of Santos’s ownership rights.
Unlike the majority, I believe that when Sanig and Tres Vidas allowed their attorney’s signature to be affixed to the receivership documents, they went in for a penny, in for a pound, subjecting themselves to the broad authority of the receiver under the ultimate supervision of the district court. That is to say, by voluntarily surrendering nearly all of their assets to the receivership, they agreed to the court’s jurisdiction to determine ownership of those assets. It is hard to see what more could be done to constitute “affirmative action” by these entities in recognition of the court’s jurisdiction.
For these reasons, I disagree with the majority’s conclusion that “acquiescence to the terms of the receivership orders had no bearing on Sanig and Tres Vidas.” To the contrary, for all that can be told from the briefs and receivership orders, there is very little of the interests of Sanig and Tres Vidas that did not come under the purview of the receiver. When they thus became parties to the receivership, they had actual notice of and opportunity -to participate in the receivership proceedings that would determine ownership of their assets. They chose not to defend themselves. I would hold that the trial court correctly entered judgment against them. I therefore respectfully dissent.